Alfred Mack, J.
This cause involves the validity, nature and duration of an execution wherein a levy was made upon chattel property under the facts and circumstances hereinafter detailed.
*502 Such facts and circumstances, so far as relevant to a determination of this cause, are:
On January 26, 1929, plaintiff, Elizabeth M. Everson, Admx., recovered a judgment against John A. Stewart, for the sum of One Thousand Dollars ($1000.00) in the Court of Common Pleas, of Hamilton county, Ohio. Proceedings in error were filed in the Court of Appeals and the judgment affirmed, and thereafter a motion to certify the record was denied by the Supreme Court of Ohio.
Thereafter, on February 13, 1931, a writ of execution on such judgment was directed to the sheriff of Hamilton county. The return upon such writ is as follows:
“1931 February 24th. By virtue of this writ I have this day levied upon the following described chattel property, to-wit:
103 — General Electric and 4 Westinghouse, 40 H. P. 60 cycle, 3 phase, 550 volt, vertical type motors, speed 1150 RPM. Each motor supplied with one starting panel, upon which is mounted a circuit breaker and 5 relay switches — approximate dimensions 30x40 inches, mounted on angle irons.
These motors are also supplied with one resistance panel, consisting of 6 — grid resistance.
“The chattel property described above levied upon as the property of John A. Stewart to satisfy the execution hereto attached and the property left at the defendant’s place of business as per directions of plaintiff’s attorney.”
Said John A. Stewart, the judgment debtor, made payments of $200.00 March 14, 1931, and $100.00 April 26, 1932, upon such judgment. Said judgment debtor conducted a business of dealing in second hand electrical and steam machinery at Vine and Water streets in Cincinnati, having some of his chattel property stored elsewhere. Such chattel property mentioned in the return of the sheriff was situated on one of the upper floors of the Vine and Water street building and was not separated from other property, nor was the same tagged or marked by the sheriff. The ■deputy sheriff testified:
“I told Mr. Stewart that the sheriff was placing a levy on his motors, and they were now in the custody of the *503 sheriff, and he was not to move them; he said he understood that.”
Before the sheriff made his return he took from the plaintiff’s attorney a writing stating:
“The undersigned hereby releases Asa V. Butterfield, sheriff of Hamilton county, Ohio, from any loss of damages he may sustain by reason of his leaving the chattel property levied upon the above styled case at the defendant’s place of business.”
Judicial notice is taken that the term of office of the sheriff making such levy expired on the first Monday of January 1933, said sheriff on said day commencing a second term of office under the election held November 1932.
In December 1930 said John A. Stewart executed a chattel mortgage to the Simmons Milling Company to secure a note for $730.00, dated December 1, 1930, payable one hundred and twenty days after date, therein pledging the following :
“100 General Electric 40 HP slip ring inclosed type vertical motors, speed 1150 RPM, 60 cycle, 3 phase, 550 volt, located on the fourth and fifth floor of the building at the southwest corner of Vine and Water streets, Cincinnati, Ohio.”
Such chattel mortgage was filed with the recorder of Hamilton county, Ohio, on April 1, 1932. Said note was assigned to The Early & Daniel Co., although no formal assignment of the chattel mortgage was made. There are various credits on such note, leaving due thereon a balance of $200.00 and interest.
Said John A. Stewart died February 7, 1933, and Colter Rule, his son-in-law, was duly appointed as administrator of the estate of the deceased, qualified as such, and duly published notice of his appointment.
Under authority of the Probate Court, Rule, administrator, sold on July 12, 1933, all the chattel property of deceased situated at Vine and Water streets, for $1050.00, to Moskowitz Bros. This sum, together with $55.00 received *504 for selling of office furniture and safe, and $80.00 received for property located at the plant of Charles Boldt Glass Works Co., are the sole assets of deceased. Including the claim of parties hereto, the total claims filed against the estate amount to almost nine thousand dollars.'
When the administrator of Stewart was appointed there were on hand 131 oil burners, some pumps, 105 General Electric 40 H. P. motors, 4 Westinghouse 40 H. P. motors, and some material. Whether this included the identical 103 General Electric and 4 Westinghouse 40 H. P. motors mentioned in the return of the sheriff, does not appear.
According to the administrator, Stewart during the last' years of his life had continued the business of buying and selling machinery and equipment, and he moved the same from one warehouse to another during the last three years preceding his death, and during said period sold electric motors. According to the testimony of the administrator the oil burners were valuable, but he was unable to compare their values with those of the motors.
Mr. Harry E. Marble, attorney for the plaintiff, explained that Stewart did not desire to incur the expense of having the motors levied upon moved from his premises and stored elsewhere, and begged Mr. Marble not to force a sale immediately, because the motors would be sold for scrap. Stewart stated he had money coming and would pay the judgment. Whenever Stewart was threatened with sale under the execution, he would say that he had a sale somewhere and was going to get money immediately.
On August 30, 1933, plaintiff filed with the administrator of Stewart proof of claim, claiming a preference and first lien on proceeds of sale of the property. Said claim was rejected as a preferred claim and allowed as a general claim.
Thereupon this action was brought for a finding and judgment that plaintiff’s levy of execution was a valid and subsisting levy and a first lien upon the property levied upon, and that such lien was transferred to the fund arising from the sale of said property, and that plaintiff is entitled to have her claim paid as a preferred claim out of the fund arising from the sale of said property.
*505 The administrator filed an answer denying that plaintiff was entitled to any lien and The Early & Daniel Company filed its answer and cross-petition alleging that its mortgage claim was allowed by the administrator as a valid lien and praying for a judgment declaring the same to be a preferred claim, payable out of the proceeds of sale to the extent of the balance of $200.00 and interest due on said mortgage.
Upon the foregoing facts and pleadings a jury has been waived and the cause has been submitted to the court.
It is not necessary to a determination of this case to consider any decisions except those of the Supreme Court of Ohio. Whatever may be the rules elsewhere the following principles are established by such adjudications of our Supreme Court, viz:
(a) A mere paper levy upon execution of chattel property is not sufficient. There must be “seasonable assertion of dominion.” Minor v. Smith, 13 O. S., 79, at 84.
This is expressed by statutes relating to execution which have been in force from very early days. The language of Section 11566, General Code, is that goods and chattels of the debtor shall be bound from the time they are “seized in execution.”
(b) A levy upon execution of chattel property and a delay for an “unreasonable time” to offer said property for sale toith the sanction and assent of the plaintif amounts to a release of the lien of such levy. The expression used in many decisions and by several text writers is that such course of conduct is a “perversion of the process of lato".
In Woodnutt v. Knowles, 14 O. S., 18, Peck, C. J. said at page 28:
“The rule deducible from the cases cited, as applicable to our practice, in which, after return of execution ‘not sold for want of time’, the plaintiff must himself initiate the further proceedings to sell, is this, — that if there has been an unreasonable delay in completing the execution by a sale, at the instance and by the authority of the plaintiff, such unreasonable delay may have the effect of postponing his, in a certain sense, dormant process, to that of a more vigilant though junior execution creditor. Mere delay, if *506 not unreasonably protracted, will not have such effect; but where the delay is unreasonable, in view of the rights of other creditors, the character and condition of the property levied upon, and the uses to which it is, in the meantime, applied, it is just and proper that a limit should be placed upon the indulgence of the creditor holding such prior lien.”
In Houk v. Condon, 40 O. S., 569, McCauley, J., said at page 574:
“A levy will not be lost except by some positive act showing an intention or unwillingness to part with the control of the property levied on, or for a neglect to enforce it for so long a time as to indicate that it has been purposely abandoned.”
(c) Where there is an actual levy of an execution upon personal property, such property is in contemplation of law in the custody of the officer. If the execution is returned showing that the property has been left with the judgment debtor, such levy is not void even as against subsequent levies.
Murphy v. Swadener, 33 O. S., 85, Johnson, C. J., said at pages 93 and 94:
“It' is apparent, this is not the case of an actual seizure or taking of the property in execution, leaving it in the possession of the judgment debtor temporarily, but a nominal levy, merely, by indorsement on the writs, under an arrangement, that the sheriff was not to interfere with the continued absolute possession and control of the property by Ogden, who was to use it free from any interference of the sheriff, who was to be indemnified'for his omission of official duty. The motive actuating the sheriff was, no doubt, one of kindness for Ogden, whom he desired to help through his embarrassments. The evidence shows that the sheriff was allowing Ogden to go on, buying and selling to make the money to pay off these executions without process. * * *
‘ “In order to make a valid levy on goods and chattels, the sheriff must have them within his power and control, or at least within his view, and if he then makes a levy, it will be good if followed up afterward within a reasonable time, by his taking possession in such a manner as to apprise everybody of the fact of its having been taken in execution.”
*507 (d) When the term of office of a sheriff expires he is required, under the provisions of Section 2843, General Code to deliver over “all goods and chattels taken by him in execution, or on attachment, which remain in his hands” to the person elected to discharge the duties of sheriff. In such case he must make “the necessary and proper return upon each such writ or other process so far as executed.”
Obviously this is the course to be pursued where chattel property seized upon execution is still claimed to be in the possession of the sheriff, and where there has not been an abandonment or release of the lien of such execution.
Applying the principles of law above mentioned to the facts and circumstances in the case at bar, the court is clearly of opinion that there has been such an unreasonable delay of a sale or further proceedings under the writ of execution issued at the instance of plaintiff, that the court can reach no other conclusion than one holding there has been an abandonment of the lien of the plaintiff upon the chattel property mentioned in the return of the sheriff. Any. other holding would, in the opinion of the court, be inequitable and amount to a fraud upon the creditors of Stewart, who dealt with him during the period of almost two years following the return of the sheriff in the case at bar.
Accordingly, the judgment and finding will be that the plaintiff is a general creditor of the deceased, and that the administrator of deceased properly rejected plaintiff’s claim as one entitled to preference.
As to the mortgage claim of The Early & Daniel Co„ this court is clearly of opinion that the administrator of Stewart erred in allowing the same as one entitled to preferential payment by reason of being secured by mortgage. Reasons for this conclusion are that such chattel mortgage was upon 100 General Electric 40 HP slip ring inclosed type verticle motors, speed 1150 RPM, 60 cycle, *508 3 phase, 550 volt, although before such chattel mortgage was recorded, and subsequent thereto, there was located on the premises mentioned in the chattel mortgage a larger quantity of such electric motors. It will be noted that the property mentioned in such chattel mortgage is neither described by a serial.number or other distinguishing mark of identification, nor as having been tagged or marked so as to be completely identified and set apart from the other similar chattel property in the possession of the mortgagor.
The rule is well expressed in Jones, on Chattel Mortgages, 5th Ed., Section 5606:
“A mortgage of a specified number of articles out of a larger number is void for uncertainty, when the particular articles intended to be conveyed are not separated, or designated in any way, so that they can be separated from others of the same kind.”
Almost twenty-five years ago the Circuit Court of this county, in Burke v. Linkmyer, 13 C. C. (N. S.) 224, held that a chattel mortgage covering “one registered Jersey bull” is void for uncertainty, where it appears that at the time the instrument was executed the mortgagor was the owner of three registered Jersey bulls. The court said:
“The mortgage itself should have contained some words of description which would have enabled one to have ascertained which of the three Jersey registered bulls was intended to be mortgaged, there being on the farm of the mortgagor three registered bulls, each one answering the description contained in the mortgage. No one is described in'particular, and the description is void for uncertainty.”
Accordingly thehe will be a finding that the chattel mortgage claim of The Early & Daniel Co. should have been allowed only as a general claim.